## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Timothy Wade | ) | |
| 11855 Sunset Ridge Pl | ) | |
| Waldorf, Maryland 20602 | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Fionta, Inc. | ) | |
| 1150 18th St. N.W., #200 | ) | |
| Washington, D.C. 20036 | ) | JURY TRIAL DEMANDED |
| | ) | |
| SERVE: | ) | |
| Matt Patterson, CEO | ) | |
| Fionta, Inc. | ) | |
| 1150 18th St. N.W., # 200 | ) | |
| Washinton, D.C. 20036 | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## COMPLAINT

**COMES NOW**, Plaintiff Timothy Wade ("Mr. Wade" or "Plaintiff"), by the undersigned

counsel, and complains of Defendant Fionta, Inc. ("Fionta," and "Defendant"), as follows:

## INTRODUCTION

1. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of

   1964, 42 U.S.C. § 2000 *et seq*. ("Title VII") for the Defendant's unlawful harassment,

   discrimination, and hostile work environment based on race (African American), sex

   (male), and sexual orientation (homosexual).

## JURISDICTION AND VENUE

2. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4. This Court has subject matter jurisdiction over this suit pursuant to 42U.S.C.§ 2000e-16(a) and (c), incorporating 42 U.S.C. § 2000e-5(f) (3).

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the events and business records that give rise to the issues in this Complaint occurred in this District.

## EXHAUSTION OF REMEDIES

6. Plaintiff has exhausted all of his administrative remedies.

7. Plaintiff filed a charge with the District of Columbia's Office of Human Rights ("OHR") on May 18, 2018, alleging discrimination and hostile work environment based on race (African American), sex (male), and sexual orientation (homosexual).

8. On March 16, 2023, the EEOC issued a Right-to-Sue Letter, informing Plaintiff that EEOC would not proceed further with the investigation and that he has ninety (90) days upon receipt of the Notice, to file suit in the appropriate court.

9. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

10. Plaintiff brings this action to recover all legal and equitable remedies available for Defendant's discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate him for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, and costs of the action.

11. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

## THE PARTIES

12. Plaintiff, Timothy Wade, is an adult resident and domiciliary of the State of Maryland.

13. Defendant, Fionta, Inc., is a Washington, D.C. Based consulting firm focused on serving nonprofit organizations and associations.

14. Defendant has its principal place of business and domicile in the District of Columbia.

## FACTS

15. Plaintiff was 37 years old when he joined Fionta, Inc in October 2017. He quickly became a valuable member of the team and was a consistent and hard-working employee.

16. Since his termination, Plaintiff has suffered financial, emotional, mental, and physical distress as a result of Fionta's discriminatory actions.

17. Plaintiff joined Fionta as a Salesforce Consultant upon successful completion of a multi-step interview process that extended over a four (4) week period. Plaintiff was hired by Defendant to perform consulting work for the National Alliance on Mental Illness (NAMI) project because his reputation, skillset, and expertise were a "great fit" for the company.

Plaintiff's contract duration for the NAMI project was slated for a one-year duration, which Plaintiff was advised of at the time of hire.

18. After his transition to Fionta, Plaintiff quickly exhibited leadership abilities and devoted his passion to client satisfaction and the prosperity of the company. It became apparent that Plaintiff, who was the only African American, and homosexual male on staff, was a stalwart employee. He took on additional responsibilities, devoted long hours to his work product, and was instrumental in all aspects of consulting operations and Salesforce development. A reflection of how dedicated the Plaintiff was to his role at Fionta, he obtained two industry-recognized certifications that was requested by the Defendant to further solidify the Plaintiff's knowledge of the Salesforce platform that was critical to his success performing Salesforce consulting work for Fionta's clients/customers.

19. During his tenure at Fionta, Plaintiff was subjected to several traumatic incidents of hostility, aggression, and intimidation from Josh Darrin (Caucasian, white, heterosexual), the Director of Technical Development.

20. Prior to his hire as a Salesforce Consultant, Plaintiff was initially being considered and recruited for the role of Technical Architect. In fact, Mr. Wade applied for the Technical Architect role, and was initially being interviewed for the Technical Architect position. However, after Mr. Darrin interviewed Plaintiff one-on-one, he recommended that Plaintiff be considered for a lower-level role of Salesforce Consultant, even though the Plaintiff was highly qualified for the Technical Architect position at that time. During the early days of the Plaintiff's career, he served as Salesforce Consultant for one of the big four consulting firms working on large-scale Salesforce consulting projects across the country. During Plaintiff's other one-on-one interviews with other team members at Fionta, they made no

references of him taking a lower-level role and it was only *after* Mr. Darrin physically interviewed Plaintiff that he indicated Plaintiff should take a lower role.

21. Mr. Darrin was the sole individual who recommended Plaintiff take a lower-level role. At the time of Plaintiff's interview, there were no minority individuals in a technical leadership role at Fionta.

22. Plaintiff became concerned that Mr. Darrin's comments were a result of Plaintiff's sex (male), race (African-American, Black), and sexual orientation (homosexual). However, Plaintiff believed that he would be able to prove he had the necessary skills to move up into the Technical Architect role and agreed to take the lower-level role of Salesforce Consultant because he believed he could achieve his short and long-term career goals at Fionta.

23. During the early morning hours on February 12, 2018, Mr. Darrin called Plaintiff into his office to discuss an assignment. For some unknown reason, Mr. Darrin began to question Plaintiff in an aggressive manner and scrutinized his level of efficiency on a task. When Plaintiff attempted to respond to his questions, Mr. Darrin was abrupt, interrupted him, balled up his fists, and began banging them on the desk.

24. At this time, Plaintiff and Mr. Darrin were the only people in the office. It was clear that Mr. Darrin, whose face began to become red, was extremely angry at Plaintiff without prompting or sufficient justification.

25. Plaintiff, who is noticeably smaller in stature than Mr. Darrin, was in fear of his safety and thought Mr. Darrin was only moments away from physically attacking him.

26. In an effort to calm, Mr. Darrin down, Plaintiff became extremely apologetic and submissive. He apologized that it took him longer than Mr. Darrin would have liked for

him to complete this particular task, but Plaintiff was beyond terrified.  In order to gather himself, and to wait for other coworkers to arrive to the office, Plaintiff walked outside to get coffee.  About fifteen minutes later, he came back in after seeing others arrive.

27. Then, on or about February 13, 2018, Mr. Darrin summoned Plaintiff and another Salesforce Consultant, Eli Nesson, into their manager's office.  His manager, Al Scott, and Mr. Darrin brough up a work matter than Plaintiff and Mr. Nesson had worked on together. Apparently, there were some automated emails going out that were causing issues for the client, which Plaintiff had no knowledge of or control over.

28. During this meeting, Mr. Darrin began questioning Plaintiff in an interrogating manner. When Plaintiff began to answer his questions, Mr. Darrin began to yell and scream at him. Again, he balled up his fists, and exclaimed that he needed to sit down before he "went off" on Plaintiff.

29. At this point, Mr. Nesson broke up Mr. Darrin's targeted attack and indicated that he had made the change that caused the issue with the automated emails, not the Plaintiff.  Despite Mr. Nesson taking accountability for the mishap, Mr. Darrin turned directly to Plaintiff and continued to berate him, as though Mr. Nesson had not admitted to making the mistake.

30. Instead of acknowledging Mr. Nesson, Mr. Darrin demanded that Plaintiff write solutions on the whiteboard so this issue—the one Plaintiff had no role in—would not happen again. Plaintiff complied, but he was visibly shaking, afraid, and embarrassed.

31. Mr. Darrin completely emasculated Plaintiff in both above incidents.  It is Plaintiff's belief that he was only treated in this manner because of his protected characteristics as an African American, homosexual male.  Since Plaintiff was the only African American male in the

company, no other similarly situated Caucasian males, or heterosexuals were treated in this way by Mr. Darrin or any other managers at Fionta.

32. If Plaintiff were a more "masculine" heterosexual male, or a non-African American heterosexual male, Mr. Darrin's approach would have been drastically different as shown by Mr. Darrin's lack of anger towards Mr. Nesson after taking ownership of the problem.

33. Mr. Darrin continuously continued to make Plaintiff the target of his aggression and hostility.

34. On or about February 15, 2018, Plaintiff reported Mr. Darrin and his differential treatment to Ms. Natalie Murchinson in Human Resources. On February 19, 2018, Mr. Murchinson called Plaintiff into her office to discuss the incidents. During the conversation. Plaintiff expressed that he was confused, scared, and emotional about the attacks by Mr. Darrin. Ms. Murchinson commented that Mr. Darrin had received complaints from other employees before, but not of this magnitude. She then noted that Fionta has a Zero Tolerance Policy, but because they had never dealt with an issue like this before, they did not have the resources and knowledge on staff to handle it. Ms. Murchinson indicated that she reached out to an external firm for assistance, but Fionta wanted to resolve any investigation prior to the company retreat the following week in Warrenton, VA, because all employees were required to attend the retreat.

35. The next day, on or about February 20, 2018, Ms. Murchinson called Plaintiff into her office with Jeffrey Sullivan, Founder of Fionta, on video via Skype. Mr. Sullivan apologized to Plaintiff for the events that occurred and asked him what he thought the resolution should be. Plaintiff expressed discomfort working in the office with Mr. Darrin and requested that he be permitted to work from home on the days that Mr. Darrin was in

the office as a temporary solution, while things cooled down. Plaintiff believed that his request was reasonable since 50% of Fionta's workforce worked remotely and Plaintiff was already working remotely on Thursdays and Fridays.

36. Mr. Sullivan responded that he could not agree to Plaintiff's proposed solution because Fionta needed both Plaintiff and Mr. Darrin in the office. Mr. Sullivan then commented that Mr. Darrin had been with the company for five (5) years, so far, and that if Plaintiff did not want to work with Mr. Darrin, he would simply "get rid of both of them," or words similar to that effect.

37. Out of fear of losing his job, Plaintiff expressed that he was open to additional methods of resolution since Mr. Sullivan did not agree with his proposal. In response, Mr. Sullivan remarked that the company had never had an issue like this before, so they did not know how to handle it. Plaintiff then asked if his job was on the line, to which Mr. Sullivan unequivocally asserted, "yes." It was at this point that Plaintiff realized that it was a mistake to have reported the issue to HR.

38. On or about February 23, 2018, Plaintiff was notified that Mr. Darrin was on administrative leave for the week of the company retreat, but he came back to work shortly thereafter.

39. On or about February 26, 2018, six (6) days after his employment was threatened by Mr. Sullivan, Ms. Murchinson began to request daily check-ins regarding Plaintiff's work assignments, which had never been done before. This only began after Plaintiff engaged in statutorily protected activity.

40. On or about March 19, 2018, Plaintiff met with Ms. Murchinson, Mr. Sullivan, and his manager Mr. Scott. During that meeting, he was told that he was being terminated effective immediately, because there was a lack of work. In conjunction with his receipt of the

termination notice, Mr. Wade was offered one (1) work week of severance pay contingent on his agreement not to sue Fionta.

41. Given the proximity of time between Plaintiff's assault, his reporting of that conduct, and his subsequent termination, Plaintiff genuinely believes that Fionta terminated Plaintiff in retaliation for his statutorily protected activity, under the guise of a "lay off" for lack of work.

42. Plaintiff had been actively recruited just four (4) months earlier for a specific and ongoing project that had a year-long contract and it was only *after* Plaintiff reported discrimination and harassment that he was terminated. Immediately prior to Plaintiff's termination, he had been thriving at Fionta without incident, and without any mention of a declining workload. Yet, within a month after Plaintiff reported hostile and discriminatory treatment by Mr. Darrin—which Fionta took no action to remedy at the time beyond paid leave during the work retreat—he was terminated.

## COUNT I

### VIOLATION OF TITLE VII –RACE DISCRIMINATION

43. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

44. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

45. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American, a man, and is considered a member of a protected class as

stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff had been an employee at Fionta with no performance issues. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

46. Plaintiff is a member of a protected class as an African American man.

47. Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

48. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

49. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

50. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

51. Other employees who were similarly situated, but were non-Hispanic or Caucasian individuals, which is different from the Plaintiff, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions.

52. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

53. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

54. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

55. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

56. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

57. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

58. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

59. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

60. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

61. Similarly, situated non-Hispanic Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

62. Defendant must comply with Title VII, but by and through their conduct, have violated Title VII.

## COUNT II

## VIOLATION OF TITLE VII – SEX DISCRIMINATION (GENDER)

63. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

64. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

65. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American, a man, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff had been an employee at Fionta with no performance issues. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

66. Defendant treated Plaintiff less favorably than similarly situated employees.

67. Because of his sex, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Title VII.

68. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

69. Defendant knew that Plaintiff was a man prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his sex.

70. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his sex.

71. Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his sex.

72. Other employees who were similarly situated, but members of a class (non-black men) different than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

73. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

74. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

75. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

76. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his sex.

77. Defendant discriminated against Plaintiff because of his sex by engaging in, tolerating or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

78. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

79. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

80. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

81. Plaintiff has incurred lost wages, loss of reputation now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT III

**VIOLATION OF TITLE VII – SEX DISCRIMINATION (SEXUAL ORIENTATION)**

82. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

83. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

84. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American, a homosexual man, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff had been an employee at Fionta with no performance issues. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

85. Defendant treated Plaintiff less favorably than similarly situated heterosexual employees.

86. Because of his sexual orientation, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Title VII.

87. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

88. Defendant knew that Plaintiff was a homosexual man prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his sexual orientation.

89. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his sexual orientation.

90. Defendant has limited, segregated and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his sex.

91. Other employees who were similarly situated, but members of a class (heterosexual employees) different than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

92. Plaintiff's sexual orientation was a determining factor in Defendant's unlawful conduct toward Plaintiff.

93. Plaintiff's sexual orientation was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

94. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

95. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his sexual orientation.

96. Defendant discriminated against Plaintiff because of his sexual orientation by engaging in, tolerating or failing to prevent discrimination on the bases of sexual orientation and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

97. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

98. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

99. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

100.    Plaintiff has incurred lost wages, loss of reputation now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT IV

## VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT

101.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

102.    When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Complainant must show that: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on his statutorily protected class; (4) the harassment affected a term or condition of employment[1] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982);

---

[1] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

*Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

103.　　Here, the five (5) elements of a *prima facie* case of a hostile work environment are met. The Plaintiff belongs to a statutorily protected class as African American, homosexual man. The Plaintiff was subjected to harassment in the form of unlawful and inappropriate verbal conduct, gestures, and invitations.　Mr. Darrin subjected Plaintiff to verbal abuse and the implied threat of physical violence on multiple occasions. This harassment affected several terms and conditions of the Plaintiff's employment, namely where the Plaintiff was severely negatively impacted by Mr. Darrin's conduct. There is a basis for imputing liability, where Mr. Darrin, acting on the Defendants behalf, subjected the Plaintiff to the above-mentioned harassment, because of his statutorily protected class as an African American homosexual man.

104.　　The actions and conduct of the Defendant as set forth herein created a hostile, offensive, and intimidating work environment, and detrimentally affected Plaintiff.

105.　　The actions and conduct by the Defendant as set forth herein were severe, hostile, and pervasive and constituted discrimination based on race, sex, sexual orientation, and retaliation.

106.　　The actions and conduct described herein would have detrimentally affected a reasonable person of the same sex, race, and sexual orientation in Plaintiff's position.

107.　　Defendant knew or should have known of the hostile work environment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the hostile work environment.

108.     By failing to protect Plaintiff; and by allowing for Caucasian, heterosexual employees to receive more favorable treatment than Plaintiff in the terms and conditions of employment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

109.     Defendant's actions, and failure to act, amounted to discrimination based on race, sex, sexual orientation, and retaliation under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

110.     As a direct result of Defendant's above-mentioned unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

<u>**COUNT V**</u>

**VIOLATION OF TITLE VII – RETALIATION**

111.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

112.     Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

113.     Here, the Plaintiff faced retaliation for his contact with HR alleging discrimination and harassment by Mr. Darrin.

114.    Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

115.    Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff engaged in the complaint process based on his informal complaints.

116.    The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

117.    Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

118.    Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

119.    Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

120.    Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

121.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

122.    Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

123.     Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

124.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

125.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

126.     Fionta, Inc. must comply with Title VII, and by and through their conduct, violated the law.

127.     The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

128.     Defendants actions were intentional, reckless, and malicious.

129.     Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

130.     Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

## <u>COUNT VI</u>

## VIOLATION OF THE DC HUMAN RIGHTS ACT OF 1977

131.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

132.     The District of Columbia Human Rights Act of 1977, D.C. Code §§ 2-1402.21 *et seq*., prohibits discrimination based on race, sexual orientation, and retaliation.

133.     Here, the Defendant discriminated against Plaintiff based on his race, sexual orientation, and retaliation, when it terminated Plaintiff for his contact with HR alleging discrimination and harassment by Mr. Darrin.

134.     The Defendant was aware of Plaintiff's race, sexual orientation, and protected activity and chose to terminate Plaintiff instead of properly addressing Mr. Darrin's harassment and disparate treatment of Plaintiff violating Plaintiff's rights DC Human Rights Act of 1977.

135.     The Defendant used this race, sexual orientation, and protected activity status to harass, demean, degrade, and humiliate the Plaintiff.

136.     The Plaintiff has suffered irreparable harm and injury as a result of this unlawful misconduct.

137.     The Defendant must comply with the DC Human Rights Act, and by and through their conduct, violated the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Mr. Timothy Wade, respectfully prays that this Court grant him the following relief:

a.     Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII;

b.      Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.      Award compensatory damages in the amount of $250,000.00 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d.      Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.      Order such other relief as this Court deems just and equitable.

## JURY TRIAL

Plaintiff requests a jury trial for all issues so triable herein.


Dated: May 30, 2023


Respectfully submitted,

_____
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 219016
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Timothy Wade*